380 So.2d 1164 (1980)
Denise M. BIENVENU, Appellant,
v.
Robert P. BIENVENU, Appellee.
No. 79-1780.
District Court of Appeal of Florida, Third District.
March 11, 1980.
Carolina A. Lombardi and Elizabeth S. Baker, Miami, for appellant.
No appearance for appellee.
Before HENDRY and SCHWARTZ, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
SCHWARTZ, Judge.
In a final judgment of dissolution, the trial court divided custody of the parties' two sons, aged four and two respectively, so that  until the older boy reached school age when the issue was to be redetermined  they would alternately spend 5 3/4 months with their father, who lives in New Orleans, and 5 3/4 months with their mother in Dade County. Each parent's right to custody was conditioned upon the posting of a $1,750 bond. Mrs. Bienvenu appeals[1] from these determinations. We reverse.
*1165 The parties, who were married in Dade County in 1975 while the husband was in the Air Force, had been engaged in a bitter dispute over their own relationship and, more significantly, over the custody of their children. At the final hearing, each, to say the least, had uncomplimentary things to say about the other. The trial court decided that, under the circumstances, "both [parents] should have a shot of having these kids for a period of time." For that reason alone, he entered the "rotating" custody award now in question. That determination cannot be approved.
It is well-settled Florida law that split-custody provisions, such as the one entered below, are strongly disfavored and ordinarily may not be sustained. E.g., Hurst v. Hurst, 158 Fla. 43, 27 So.2d 749 (1946); Unger v. Unger, 306 So.2d 540 (Fla. 3d DCA 1975); Wonsetler v. Wonsetler, 240 So.2d 870 (Fla. 2d DCA 1970). The essential reason for this rule lies in the fact that, in the usual case, such an arrangement does not promote what is the only proper concern in custody cases: the best interests of the child. As the supreme court said in the Hurst case, supra, at 27 So.2d 750:
[T]he question may be ... narrowed to the one whether the welfare of the child will be promoted if he is placed with first one parent and then the other, his home life interrupted every half-year. It is thoroughly established that in such circumstances the primary concern of the court is the well-being of the child, and we have grave doubt that an infant three years old can develop normally and thrive if at the end of every six months he is removed from surroundings familiar to him and forced to become accustomed to new ones. The predicament of the child would probably be further complicated by the fact that both parents have remarried.
This doctrine applies with even greater force to this case. The situation confronting the children during each successive period of custody and at and after each exchange would be rendered even more distressing by the fact that their mother and father are so mutually antagonistic. Moreover, in Rudolph v. Rudolph, 146 So.2d 397 (Fla. 3d DCA 1962), this court made it very clear that, contrary to the judgment below, these considerations may not be overridden by a concern, however well-intended, that justice be done to the parents. At 146 So.2d 399, we said:
There is no doubt but that the chancellor was attempting by this arrangement to be fair to each of the parties. In custody matters, however, it is not the rights of the parties which are of paramount importance, but the best interests of the minor. Hurst v. Hurst, 158 Fla. 43, 27 So.2d 749. Divided custody which involves periodic removal from familiar surroundings is not desirable nor conducive to a child's welfare. [citing cases]
See also, e.g., Lee v. Lee, 43 So.2d 904 (Fla. 1950); Peterseil v. Peterseil, 307 So.2d 498 (Fla. 3d DCA 1975); Julian v. Julian, 188 So.2d 896 (Fla. 3d DCA 1966). This is not to say that a divided-custody arrangement may not be approved when justified by some particular circumstances which would tend to ameliorate its undesirable effects. Such factors might include, for example, older and more mature children, parents who live near each other or are willing to cooperate in lessening the impact of the changes in custody, and a division of periods of custody which is related to actual events in the children's lives, such as between school and holiday periods.[2] See, e.g., Dworkis v. Dworkis, 111 So.2d 70 (Fla. 3d DCA 1959), cert. denied, 115 So.2d 6 (Fla. 1959). See generally Annot., Comment *1166 Note  "Split," "divided," or "alternate" custody of children, 92 A.L.R.2d 695 (1963). The case at bar, however, involves none of these circumstances, nor any similar one. To the direct contrary, it presents a classic case for the application of the general principle that children should not be divided in half, either physically, as Solomon wisely only proposed, or temporally, as unwisely actually effected in the judgment under review.
We also find merit in the appellant's claim of error in the requirement that she post a bond "to guarantee the children are not removed from the State of Florida." Apart from two years spent with her husband in service, Ms. Bienvenu and her family have lived in South Florida all her life. Both she and her fiance are employed in Dade County. There is no evidence that she has violated any court order in the past and, in sum, no basis whatever for believing that she might remove the children from the state. Compare, e.g., Metz v. Metz, 108 So.2d 512 (Fla. 3d DCA 1959). Based upon "the circumstances of the parties and the nature of the case," as stated in Sec. 61.13(4), Fla. Stat. (1977), which authorizes a dissolution court in a proper case to require that security be posted, there was thus no foundation for the bond provision. On this record, it constituted, in effect, an unsupported finding that the appellant was likely to be in contempt of the custody order, and served only to interpose an unjustified financial barrier between the children and their mother. The trial court therefore abused its discretion in entering that portion of the judgment below.
We do not agree with the appellant's final contention that the custody of the children must be awarded to her. The issue of which of the two parents should be granted custody should be initially considered and ruled upon by the trial court after remand. In making that determination, the court may take such further testimony, bearing upon the best interests of the children, as it deems advisable.
The custody provisions of the final judgment under review are therefore reversed and the cause is remanded for further proceedings consistent herewith.
Reversed and remanded.
NOTES
[1] Because the rotating custody was to remain in effect only until the older child reached the age of six, the wife has taken an "interlocutory" appeal pursuant to Fla.R.App.P. 9.130(a)(3)(C)(iii). Since, however, the award in question was contained in the final judgment, only a plenary appeal under Fla.R.App.P. 9.110 is appropriate and, in accordance with Fla.R.App.P. 9.040(c), we have so treated this proceeding.
[2] The 5 3/4 month period was selected only to avoid the establishment of another "home state" of the children, which might have occurred under the Uniform Child Custody Jurisdiction Act, §§ 61.1306(5), 61.1308, Fla. Stat. (1977), if they spent six months in another jurisdiction. We need not belabor our extreme disapproval of basing a ruling which should concern only the welfare of the children upon such a consideration.