406 So.2d 1150 (1981)
Delores Rubel GERSCOVICH, Appellant/Cross-Appellee,
v.
Eugenio Alberto GERSCOVICH, Appellee/Cross-Appellant.
No. 81-129.
District Court of Appeal of Florida, Fifth District.
October 28, 1981.
As Clarified December 7, 1981.
*1151 James A. Lowe and James E. Taylor, Jr., Orlando, for appellant/cross-appellee.
Meredith J. Cohen, Orlando, for appellee/cross-appellant.
HERSEY, GEORGE W., Associate Judge.
Delores Rubel Gerscovich appeals and Eugenio Alberto Gerscovich cross-appeals from the final judgment in a dissolution of marriage proceedings.
The issues raised relate to child custody and child support, rehabilitative alimony, permanent alimony and property interests, costs and attorneys' fees. We will treat the issues in that sequence.

CUSTODY
Custody of the two minor children, Gabrielle, age eleven and Mark, age fifteen, is to be rotated or alternated between the parents on a yearly basis. Mother had custody during the separation and dissolution proceedings and father took custody on August 1, 1981. Mother will again have custody on August 1, 1982 for one year. This is sometimes referred to as split custody. For clarity it is preferable to reserve use of that term for the situation where custody of one or more children is awarded to one parent and the remaining children to the other parent. Joint custody and divided custody are also inexact and therefore troublesome terms. For present purposes we will speak of rotating or alternating custody.
It has been correctly pointed out that the weight of precedent disfavors rotating custody. The factors which have been deemed important by courts which have considered the question are the ages of the children, the length of each period of custody, and the disruptive influences created by differing surroundings in alternate custody periods. The distance between the two places of custody is one element of this latter factor. Another relevant and rather important consideration is the attitude of the parents toward one another, or at least how that attitude will be perceived by (and thus induce and influence upon) the children.
In Hurst v. Hurst, 158 Fla. 43, 27 So.2d 749 (1946) the custody of a child three years of age was to be rotated every six months. On the assumption that a child of tender years needs its mother, both parents having been found fit, the court struck down rotating custody. The tender years doctrine was again applied to invalidate rotating of custody every six months in Wonsetler v. Wonsetler, 240 So.2d 870 (Fla.2d DCA 1970).
Custody of a two year old child to the father on weekends and to the mother on weekdays was reversed in Rudolph v. Rudolph, 146 So.2d 397 (Fla.3d DCA 1962). The court reiterated the time honored rule that "it is not the rights of the parties which are of paramount importance, but the best interests of the minor." Id. at 399. The court further pointed out:
Divided custody which involves periodic removal from familiar surroundings is not desirable nor conducive to a child's welfare [citations omitted]. Since there is nothing in the record to demonstrate that the wife is not a proper person to have the custody of the young child of the parties, the decree should award full custody to her with reasonable rights of *1152 visitation in the father [citation omitted]. Id. at 399, 400.
Rotating custody of a four year old child on the basis of agency reports made from time to time was disapproved in Unger v. Unger, 306 So.2d 540 (Fla.3d DCA 1975).
Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla.3d DCA 1980) struck down an attempt to rotate custody of children aged two and four between the mother in Florida for five and three-quarter months and the father in Louisiana for five and three-quarter months.
Despite this awesome array of judicial disfavor, the prohibition against alternating custody is not absolute.
In the following cases some form of alternating custody was permitted: Hare v. Potter, 233 So.2d 653 (Fla.4th DCA 1970); Lindgren v. Lindgren, 220 So.2d 440 (Fla.2d DCA 1969); Bolton v. Gordon, 201 So.2d 754 (Fla.4th DCA 1967); Hutchinson v. Hutchinson, 127 So.2d 136 (Fla.3d DCA 1961); and Metz v. Metz, 108 So.2d 512 (Fla.3d DCA 1959).
Even in some of those cases where an award of alternating custody was reversed, the courts expressed approval of it in certain situations. In Wonsetler v. Wonsetler, supra, the court said: "split custody [referring to rotating custody] can be condoned if there are special circumstances or legally unequal facts present to support such an arrangement." The court, in Bienvenu v. Bienvenu, supra, also observed that rotating custody was not totally abhorrent to our judicial system:
This is not to say that a divided-custody arrangement may not be approved when justified by some particular circumstances which would tend to ameliorate its undesirable effects. Such factors might include, for example, older and more mature children, parents who live near each other or are willing to cooperate in lessening the impact of the changes in custody, and a division of periods of custody which is related to actual events in the children's lives, such as between school and holiday periods. [citations omitted]. Ibid. at 380 So.2d at 1165.
We look, then, to the "particular circumstances" of the Gerscovich situation, after making preliminary observations.
Regardless of the number of adverse precedents it cannot be said that a rule of law is involved in awarding custody of the Gerscovich children in rotating fashion. Rather the award is an exercise of discretion by the trial court. We are therefore bound to apply the test that if reasonable men could differ as to the appropriateness of the trial court's ruling then we are not at liberty to disturb it. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). We may not ask whether it is the best result; only whether it is reasonable.
On the other hand, we are compelled to consider whether the result is in the best interest of the children.
Balancing the two tests we conclude that our task is to determine whether reasonable men could differ as to whether or not rotating custody, under the circumstances of this case, is in the best interest of the children.
(1) Age. The children are not infants nor "of tender years." They are eleven and fifteen years of age respectively. We are therefore not called upon to determine what effect the provision of Section 61.13(2)(b) Florida Statutes (1979) that: "Upon considering all relevant factors, the father of the child shall be given the same consideration as the mother in determining custody ... ." has upon the rule that "other things being equal, ... the mother of infants of tender years [is] best fitted to bestow the motherly affection, care, companionship, and early training suited to their needs." quoted and specifically adopted as the Florida view in Hurst v. Hurst, 27 So.2d 749, 750 (Fla. 1946) from an Alabama case previously cited and quoted from with approval in Fields v. Fields, 143 Fla. 886, 197 So. 530 (1940).
(2) Stated preference of the children (taking into account their stage of maturity). The children were consulted and favored the change in custody which, at the *1153 time of the hearing, was prospective and which has now taken place, as of August 1, 1981.
(3) Proximity of custodial domiciles. As originally contemplated by the parties and enshrined in the final judgment, possession of the marital residence was to alternate in the same fashion as custody of the children, so that there would have been no disruption of their physical surroundings by changes of custody. By subsequent order, also on appeal here, father-appellee was permitted to take custody in August and to remove the children to a new home now occupied by him and a new wife, which is located three miles from the marital residence.
The effect is to intensify, to some degree, the impact on the children of changes in custody, but we do not see the effect as sufficiently drastic to require a different result. We were comfortable with a continuation of custody of the children in their homeplace regardless of the parent in residence. We are less so under the revised arrangement. Our reticence to give wholehearted approval to the change is not, however, sufficiently intense to justify a finding of abuse of discretion. The community is the same; schools are the same; friends no doubt may remain substantially the same; and visitation rights are not hampered by the change.
(4) Reasonableness of periods of alternating custody. The use of one calendar year would seem to be the least disruptive interval that could be selected for rotating custody. Certainly an appellate court is in no position to hold that six months or any other time period would be "more reasonable" in the absence of particular adverse circumstances and none appear in this record.
The trial court found both parents fit to have custody of the minor children. There can be no question that a child benefits from the influence of both a father and a mother in making the varied and at times stressful adjustments imposed by adolescence and its transformation to adulthood. Where circumstances warrant, as here, the best interest of minor children may well be served by alternating custody between parents and we therefore affirm that aspect of the final judgment.

CHILD SUPPORT
The judgment appealed from requires the father to pay certain expenses of the children and, in addition, to pay child support in the amount of $2,000 per month until the younger child attains the age of eighteen or becomes self-supporting or emancipated. The mother complains that this is not enough. The father requests a technical revision to provide for $1,000 per month per child in order to avoid the consequence that he will be obligated to pay $2,000 per month even after one child attains the age of eighteen years while the other child remains a minor.
The parties offer differing versions of the amount needed for support of the children. They agree, however, that private schools and other amenities that would have been supplied but for the breakup of the family are to be enjoyed by the children in any event. It is only the method of computing the cost of these amenities that is in dispute.
The trial court found that $2,000 per month would be required to meet the mutual expectations of the parties for their children. The record supports that determination.
While the final judgment is not explicit in that regard we have assumed that the child support payments are to be made only in months during which the mother has custody. On remand the judgment shall be modified to expressly so provide and to require the payment of $1,000 per month per child.

REHABILITATIVE ALIMONY
The wife was awarded $1,000 per month for a period of five years as rehabilitative alimony. Before the marriage, wife was a registered nurse with a specialty in surgery. There was testimony that by reading and studying she had maintained her academic proficiency in this specialty. *1154 To counterbalance this evidence, it was shown that the wife lacked recent practical experience, having been engaged for fifteen years as wife, mother and homemaker, and that she suffered under a slight medical disability. An employment agent testified that she could be immediately employed as a surgical nurse at a salary between $12,000 and $20,000 per year. There was also some evidence that the medical problem would not substantially interfere with the duties of a surgical nurse. The wife, however, would like to go back to school to obtain a PhD degree in psychology in order to establish a new career.
The principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills Reback v. Reback, 296 So.2d 541 (Fla.3d DCA 1974).
Canakaris v. Canakaris, supra, at 1202. Generally speaking, an award of rehabilitative alimony to provide a college education will invite particular scrutiny. See Murray v. Murray, 374 So.2d 622 (Fla.4th DCA 1979). It is our view, however, that the trial court could have found, on the evidence presented, that the wife would require some amount of retraining and practical experience before she could become self-supporting. In addition, the question of whether the medical disability might have an adverse effect on the wife's ability to reenter the nursing profession has not been foreclosed by anything in the record. On that basis the award of rehabilitative alimony seems justified. Particularly is this true when the award is considered as simply one element of the total alimony picture.

PERMANENT ALIMONY AND PROPERTY INTERESTS
Both parties are dissatisfied with the awards related to alimony and property interests. Not surprisingly, the opposing briefs present a picture of the respective assets and liabilities of the husband and wife that are in stark contrast to one another. It is most difficult for a trial court to effect equitable distribution of a fortune which is made to appear ephemeral; it is next to impossible for an appellate court to do so. Appellant-wife represents that the husband has assets in his own name of roughly $450,000; that assets in joint names total $210,000; and that wife has assets of $14,500. Liabilities of $150,000 complete the net worth picture. The answer brief of appellee-husband takes a slightly different approach, suggesting that under the Final Judgment the husband retains assets of $205,000 whereas the wife ends up with $400,000. Appellant-wife then responds by maintaining that "by virtue of the trial court's ruling, the Husband receives assets of $554,293.00 while the Wife receives assets totaling $121,253.00."
In a similar vein, the amount of husband's annual net income is in serious dispute.
The wife is awarded one-half of the marital residence and other joint interests, right to possession of that residence in alternating years, plus $500 per month as permanent periodic alimony. We can do no better, in weighing the relative merits of the parties' respective positions than the supreme court did in Canakaris v. Canakaris, supra, which is to quote the sine qua non of equitable distribution enunciated by Judge Rawls:
How shall the material wealth of a marriage which is being dissolved be divided when one partner, the wife, has contributed her time to the marital home and children of the parties while the husband has pursued the accumulation of material goods. The evolution of the law of alimony that we have reviewed in length shows that today the contributions of each party to the accumulation of material assets must be considered in dissolving the marital partnership. Either spouse may contribute either by working in the market place or by working as a homemaker. The fact that in one marital venture a spouse is gainfully employed in the market place and pays a housekeeper to rear the children and keep house is not distinguishable from the spouse who devotes *1155 his or her full time to the profession of homemaker. The primary factual circumstance is each spouse's contribution to the marital partnership.
Brown v. Brown, 300 So.2d 719, 726 (Fla.1st DCA 1974).
The Canakaris court, referring again to the Brown opinion, reiterated the pole star of judicial discretion in the area of equitable distribution:
The court emphasized that its policy was not grounded upon principles of community property, but on basic fairness; a dissolution award should be sufficient to compensate the wife for her contribution to the marriage.
We recognize that a trial court need not equalize the financial position of the parties. However, a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be "shortchanged." 382 So.2d 1197 at 1204.
It is our view that the final judgment comports with basic fairness to both parties and that the record supports the final judgment in all important respects. With the following minor exceptions we therefore affirm:
1. Child support in the amount of $1,000 per month per child shall be payable during minority in months in which the wife has custody;
2. The judgment shall confirm the 0.5% Limited Partner Ownership interest in wife's name; and
3. The wife shall be indemnified for the $90,000 business loan to the limited partnership on which she is apparently jointly and severally liable.
4. On remand it will also be necessary for the trial court to revisit the question of possession of the marital residence since that will no longer follow custody of the children.
We otherwise affirm the awards of custody of the children, child support, interest in jointly owned assets, rehabilitative and permanent periodic alimony and costs and attorneys' fees.
As hereinabove specified, we AFFIRM IN PART; REVERSE IN PART; and REMAND for appropriate further proceedings.
DOWNEY, JAMES C., and HURLEY, DANIEL T.K., Associate Judges, concur.