DAUKSCH, Judge.
This is an appeal from a judgment awarding primary residential responsibility of a child.
In any child custody proceeding the prime consideration is the welfare of the child. Miraglia v. Miraglia, 462 So.2d 507 (Fla. 4th DCA 1984); Marshall v. Marshall, 375 So.2d 1082 (Fla. 1st DCA 1979). *852 All factors affecting the best interest and welfare of the child must be considered. Section 61.13(3), Florida Statutes (1985) lists ten factors which the trial court should consider in evaluating and determining the best interest of the child. It appears from the final judgment dissolving marriage and providing for custody that the trial court did not correctly apply the statutory criteria.
From the time of the parties’ separation in July 1983, until February 1984, the parties shared residential responsibility for the child on a fifty/fifty basis. In February 1984, the child was living with the mother in New Smyrna Beach and was enrolled in preschool. One day unexpectedly the mother called the father and told him to pick up the child from school because she was moving out of town. The child moved in with the father who was living with his mother and sister in Sanford. The father enrolled the child in a preschool center in Sanford for the remainder of the 1983-84 school year. In the summer of 1984, the mother returned and the child spent most weekdays with her and every weekend with the father. In September 1984, the child moved in with the father again at his mother’s residence in Sanford, Florida, and lived there until the custody hearing. While the child was living with the father, the mother was given weekend visitation, was invited to participate in school activities and was given the opportunity to visit the child on holidays and birthdays.
It is clear that both parents equally meet the criteria of section 61.13(3)(a), (b) and (c), Florida Statutes (1985). The record indicates cooperation between the parents in allowing frequent and continuing contact with the non-custodial parent. It is evident that both parties have love and affection for the child and there is every indication that both parties have the capacity and disposition to provide the child with the necessary material needs and health care.
It is incumbent upon the court to also evaluate the moral fitness and mental and physical health of each parent in making a final custody determination which is in accordance with the best interests of a minor child. § 61.13(3)(f) and (g), Fla.Stat. (1985). On Labor Day weekend, September 1984, while the child was with the father in Sanford, the mother attempted suicide by poly-drug overdose and drinking alcohol. She was treated at a hospital and released shortly thereafter. The attending physician and psychiatrist recommended that she pursue psychological counseling, however she did not. The only psychologist she saw after the suicide attempt was Dr. Duncan Bowen whom she saw in March of 1985 in preparation for litigation. Dr. Bowen testified that at her first visit she smelled of alcohol and admitted that she had a hangover. Dr. Bowen spoke with her for only an hour and then she was to take a psychological test. However, Dr. Bowen testified that she was required to return at another date to take the psychological test and that alcohol was one of the reasons why she was required to return. Based on this limited contact, Dr. Bowen testified that she was stable but he did not make a recommendation as to custody.
There is ample evidence that the mother has an alcohol problem. Several witnesses testified that prior to the separation and during the separation of the parties she often became intoxicated and was sometimes intoxicated in the presence of the child. In his closing remarks the trial judge noted that it appeared that the mother had an alcohol problem and that she should seek help.
The mother claims that during the marriage she was the victim of physical abuse at the hands of the father. She is the only person that testified to this physical abuse. One police report was admitted into evidence in which the mother filed a complaint against the father on the advice of her attorney. The police report indicated that the mother had marks on her wrists and neck. The father testified that the marks were inflicted while he was trying to stop the mother from throwing things at him and spitting in his face. The mother testified she had seen the father in possession *853 of illegal drugs and she said also that the father had been intoxicated many times.
Numerous witnesses testified that while living with the father during the past year the child was extremely well dressed, well behaved, happy and well adjusted to her home and educational environment. § 61.-13(3)(h), Fla.Stat. (1985). The father had involved the child in numerous extracurricular activities such as ballet, tap, iceskat-ing, Sunday School, Jazzercise and piano lessons. There is no showing that the father’s custody of the child was unsatisfactory in any way. The most suggestive evidence that the mother could muster to fault the father was the assistance of the paternal grandmother and aunt in creating a home for the child.
In evaluating the criteria laid out in Florida Statute 61.13(3) (1985), two criteria stand out as dispositive of this custody determination; a stable environment and the permanence of the custodial home. § 61.13(3)(d) and (e), Fla.Stat. (1985). The mother had moved eight times in the four months preceding the custody hearing. It is also noted that the mother did not pursue contact with the child during the 1984-85 school year even though she was given ample opportunity. The mother missed the child’s birthday and Christmas even though arrangements had been made. In addition, shortly after the mother was awarded primary residential responsibility she moved the child from Titusville to Palm Bay.
It is well settled that a familiar and orderly environment is preferred and is in the best interest and welfare of the child. Spradley v. Spradley, 335 So.2d 822 (Fla.1976); Dinkel v. Dinkel, 322 So.2d 22 (Fla.1975). In re Gregory, 313 So.2d 735 (Fla.1975). It appears that the father has proposed a more permanent custodial home. The father has lived in the same house for the past three years and intends to purchase a house further down the street for himself and the child. The child was thriving in the custody of the father and had adjusted to and engaged in cultural, religious and athletic activities. The stability offered by the father and the desirability of maintaining continuity requires that we remand this case for consideration of these statutory criteria. We recognize and have applied the law governing appellate court review of discretionary rulings. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Gerscovich v. Gerscovich, 406 So.2d 1150 (Fla. 5th DCA 1981).
It is noted that the trial court improperly considered as a basis for its decision that “both before and since the birth of the minor child of the parties the Respondent/Mother has had extremely strong feelings towards the viability and welfare of the child.” [emphasis supplied] This reference to only the mother’s parental bond is significant. On the record the trial judge made the comment “... since the father was going to go along with an abortion and the mother was the one that decided to have the child, I think that’s important.” This comment is not supported by the evidence which showed that the father would have acquiesced in an adoption if the mother so desired, before they were married. After the decision to keep the child was agreed upon the father moved in with the mother, supported and assisted her and their child and later married the mother. The evidence is just as strong, or stronger, that the father also had such feelings for the “viability” of the child, and we consider the comment quite significant and directly related to the judge’s unsupported reference regarding abortion. The best interest of the child may not be overridden by concern, however well intended, for one of the parents. Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980). After considering all relevant factors a trial court should give the father the same consideration as the mother when determining custody. Sherrod v. Sherrod, 448 So.2d 1234 (Fla. 1st DCA 1984).
We also take note that the trial court erred by improperly admitting into evidence a settlement proposal and testimony on negotiations concerning the child custody dispute. The father and the mother had engaged a mediator who had drawn up *854 a proposed settlement as to child custody. This proposal had gone back and forth between the parties for some time. Neither party signed the proposal. Under Florida law, settlement offers made while a controversy is pending are inadmissible. Atwater v. Gulf Maintenance & Supply, Inc., 424 So.2d 135, 136 (Fla. 1st DCA 1982), § 90.408, Fla.Stat. (1985). Admission of this settlement proposal resulted in error because the trial court partially based its decision that the mother should receive primary residential responsibility based on the allegations that the father had agreed to the settlement proposal and that the mother would have custody of the child from grades one through twelve. Basing his decision on a finding that the parties had agreed to the proposal was error both in fact and in law.
We reverse the judgment awarding primary residential responsibility to the mother and remand the matter to the circuit court for a new hearing to determine the issue, with proper application of the law as expressed herein.
REVERSED in part; REMANDED.
COBB, C.J., and ORFINGER, J., concur.