## MULLIGAN v MULLIGAN
### Case No. 86-930-CA
Fifth Judicial Circuit, Citrus County
April 4, 1990

## OPINION OF THE COURT

RAYMOND T. McNEAL, Circuit Judge.

### ORDER DENYING PETITION FOR MODIFICATION

Petitioner, Elizabeth Mulligan, filed a Petition for Modification requesting that she be allowed to remove the minor children permanently from the State of Florida to her anticipated new home in California. Petitioner, who recently graduated from law school and who has taken the Florida Bar exam, plans to marry a California attorney and move permanently to that state. Respondent, Kevin Mulligan, objected to the move contending that the move is not in the children's best interests because of the very close personal relationship he enjoys with them. The court finds that the move is not in the

children's best interest so the petition is denied. Because petitioner has not married or moved, Respondent's counter-petition requesting a change in custody is not ripe for a decision and will remain pending.

Petitioner and Respondent were divorced August 14, 1986. The Property Settlement Agreement and Addendum entered into on July 15, 1986 and incorporated into the Final Judgment of Dissolution of Marriage, contained the parties' understanding of shared parental responsibility and provided that "neither party shall remove the children from the State of Florida on a permanent basis without prior order of this court." Such an agreement is consistent with the concept of shared parental responsibility allowing both parents to "retain full parental rights and responsibilities with respect to their child." *Fla. Stat.* § 61.046(11) (1989).

Before the court can modify this provision, it must find that the proposed move is in the best interests of the Mulligan children. Deciding the children's best interest requires an analysis of all of the factors affecting the welfare and interests of the child and the specific criteria set forth in *Fla. Stat.* § 61.13(3) (1989). *Stamm v Stamm*, 489 So.2d 851 (Fla. 5th DCA 1986). The factors listed in *Fla. Stat.* § 61.13(3) (1989) are:

(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.

(b) The love, affection, and other emotional ties existing between the parents and the child.

(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care, . . . and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment and desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed marital home.

(f) The moral fitness of the parents.

(g) The mental and physical health of the parents.

(h) The home, school, and community record of the child.

In addition to these factors, many courts apply the reasoning in *D'Onofrio v D'Onofrio*, 144 N.J. Super. 200, 365 A.2d 27 (Ch. Div.), *aff'd*, 365 A.2d 716 (1976) to determine whether the custodial parent should be permitted to relocate:

1. The likelihood of the move improving the general quality of life for both the primary residential spouse and the children.

2. The integrity of the motives for seeking the move to insure it is not done for the express purpose of defeating visitation.

3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.

4. That substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent.

To this list, the Fourth District Court of Appeals has added:

5. That the cost of transportation is financially affordable by one or both of the parents.

6. That the move is in the best interest of the children.

*DeCamp v Hein,* 542 So.2d 708, 711 (Fla. 4th DCA 1989).

The sixth requirement is clearly the touchstone approved by the Fifth District Court of Appeals in *Giachetti v Giachetti,* 416 So.2d 27 (Fla. 5th DCA 1982). In addition to the six factors applied by Judge Gavin Letts in *DeCamp,* it is important to consider the parties' agreement providing restrictions on moving and to consider the public policy of Florida favoring shared parental responsibility. *Cole v Cole,* 530 So.2d 467 (Fla. 5th DCA 1988).

*Giachetti* also requires a custodial parent seeking removal to show a material change in circumstances necessitating the modification. *Id.* at 29. In the instant case Mrs. Mulligan has not remarried and has not relocated to the state of California. Nevertheless, the court finds that her anticipated move and imminent marriage to a California lawyer is sufficient to require the court to examine if such a move would be in the best interests of the children. In cases where the Final Judgment of Dissolution of Marriage requires a court order to remove a child from the jurisdiction of the court, such application prior to the actual change in circumstances is not only authorized, but prudent.

## GENERAL QUALITY OF LIFE

Although Mrs. Mulligan testified that the quality of life will be improved for her and the children, the only objective criteria she could point to was the ability of her future husband to support her so she could work part-time, eliminating the need to leave the children in Day Care and allowing her to use her income to provide for visitation by the natural father. She adds that because she will be happier, the children will be happier. *See e.g., In Re: Marriage of Burgham,* 86 Ill. App. 2d 341, 408 N.E. 37 (Ill. 1980). She does not have a job and has not taken the California Bar exam. The only reason for the move is her desire to be with the man she loves. *See, Cole* at 468.

204

The children have been disrupted once by the dissolution of marriage and again by their mother's unplanned move to St. Petersburg, Florida. Analyzing objective criteria, it does not appear that the children's quality of life will be improved by moving to Los Angeles, California, 3000 miles away from their father, their extended family, their church and their friends.

## MOTIVE FOR THE MOVE

Mr. Mulligan does not contend that the move is being made to defeat his visitation rights although Mrs. Mulligan has made this threat in the past. The planned move is insensitive to Mr. Mulligan's right to visit with his children and to be involved in their lives. Since her Petition for Modification Mrs. Mulligan has been extremely cooperative regarding visitation but this has not always been the case.

## FLAUNTING THE FLORIDA COURT

The past history of this case raises concerns that Mrs. Mulligan will in fact the orders of this court. Previously, the court found that she had violated the provisions relating to shared parental responsibility by interfering with the father's right of free access to the children provided by Florida law. The one time the children visited in California, they were not returned in time for the father's scheduled visitation.

## SUBSTITUTE VISITATION

The substitute visitation suggested by Mrs. Mulligan is not only impractical, it will not serve the best interests of these children. Mr. Mulligan is not a typical father. He has never missed an opportunity to visit with his boys or to be involved in their activities. He frequently drives over 100 miles to see the boys for a few hours, to meet with their teachers or to drive for their school field trips. He coaches their baseball team. He provides for their Catholic religious training. He has gone to extraordinary lengths to foster and maintain a father-son relationship under adverse circumstances.

Theoretically long term visitation may reasonably substitute for weekly contact. *D'Onofrio* at 207, 365 A.2d at 30. But the Fourth District Court of Appeals while embracing this unsupported finding of the *D'Onofrio* court, acknowledged that allowing a parent to move out of state wreaks havoc on the visitation rights of the noncustodial parent. *DeCamp* at 710. It could never substitute for the type of relationship Mr. Mulligan has with his sons. He is totally involved in their lives. On the surface, extended visitation seems very reasonable, but it overlooks basic facts of life. Most people work for a living and

there is no way a father can take off an entire summer to visit with his children. But he can be off to visit with them on weekends or in the case of Mr. Mulligan, normal days off from work. Children attend school. They cannot leave school a week each month during the school year to visit with the father, as suggested by Mrs. Mulligan. Substituting extended visitation while the father is working or while the children are in school cannot substitute for short periods of visitation while the father is away from work and the children are out of school.

An examination of substitute visitation in this case would not be complete without comparing the visitation contemplated by the property settlement agreement, the visitation that existed before Mrs. Mulligan moved to St. Petersburg, the visitation that has occurred while the children were living in St. Petersburg and the visitation that will be practical if the children are removed to Los Angeles, California. Needless to say, each move substantially decreases the father's ability to be involved in his children's lives in the manner contemplated by the parties' agreement. While some flexibility must be allowed in dealing with divorced parents and their children, one party should not be allowed to totally eviscerate the terms and intent of their original agreement.

### FINANCIAL FEASIBILITY

Although Mrs. Mulligan has offered to do anything to provide the father access to the children in California, including paying all of his expenses and providing him with a car, she does not have the funds to do this. Mr. Mulligan cannot afford those expenses either. Mrs. Mulligan testified that she would have all of her income from a part-time job to pay these expenses, but her future husband testified they were planning to have children and that Mrs. Mulligan would not be working after their child was born. Also, as the court pointed out before, Mrs. Mulligan does not have a job and has not taken the California Bar exam. Mrs. Mulligan's testimony was cleverly devised to remove almost any recognized argument Mr. Mulligan could make using the *D'Onofrio* analysis. She has offered unlimited visitation and has offered to pay all expenses, making substitute visitation ostensibly attractive and affordable. A hard look at the proposal reveals that it is unrealistic and impractical. Were the move to California in the children's best interests, the parties could afford some travel expenses, but the visitation they could afford could never substitute for the involvement Mr. Mulligan and the children enjoy now.

### BEST INTERESTS OF THE CHILDREN

The only expert witness, Dr. Rodney Poetter, a clinical psychologist,

testified that the best interests of the children would be best served by the mother living reasonably close to the father. He did not express an opinion on whether the move would be in the best interests of the children. Dr. Poetter's opinion as it relates to that issue is that they would be significantly adversely affected by a move to California. They of course would be adversely affected if they stay with the father in Florida and their mother moves to California. That issue is not being decided at this time, but the court would point out that there are numerous factors in favor of them staying in Florida even if the mother chooses to move to Calfornia.

Each of the parties feels that maintaining continuity is an important factor in determining what is in the best interests of the children. Mrs. Mulligan points to the fact that she is the residential parent and that the children have done well with her. That is true, but the concept of continuity involves other aspects of their lives as well. Most of the factors that provide continuity to the children's lives are in Florida, primarily in Inverness, Florida, where their father lives. They have their home (former marital home), their church where they are undergoing Catholic religious training, friends and relatives. This "home base" provides stability and continuity to their lives.

## SHARED PARENTAL RESPONSIBILITY

The court has found on more than one occasion that shared parental responsibility is in the best interests of the Mulligan children. *Fla. Stat.* § 61.13(2)(b)1. (1989) makes frequent and continuing contact with both parents the public policy of Florida. *Fla. Stat.* § 61.13(2)(b)2. (1989) requires that parental responsibility be shared by both parents unless it would be detrimental to the child. Where a noncustodial parent has participated in the children's lives in a manner contemplated by the concept of shared parental responsibility and where that parent has paid support, a custodial parent should not be allowed to relocate so far away from the noncustodial parent that participation of the noncustodial parent in the children's lives is impossible or impractical, especially where the parties have negotiated an agreement for visitation that cannot be implemented if the move is allowed. That is not to say the best interests of a child in that situation would never be served by a relocation. It means that any relocation request should be carefully scrutinized to see if it will affect shared parental responsibility. Otherwise we are merely giving lip service to the concept, rather than encouraging compliance with it. The situations are not mutually exclusive. Under some circumstances you can have shared parental responsibility if one parent moves, but the greater the distance between

207

the children and the nonresidential parent, the more difficult it is for the nonresidential parent to enjoy their constitutionally protected right to fellowship and companionship with the child, to take part in their day-to-day activities and to be available in emergency situations. Freely allowing such moves by the custodial parent would relegate the noncustodial parent to the position of a grandparent. *See e.g., Fla. Stat.* § 61.13(2)(b)2.c. (1989) providing that no court shall order a child kept within the state or jurisdiction of the court solely for the purpose of permitting visitation by grandparents. Freely allowing such moves does not encourage compliance with the intent of *Fla. Stat.* ch. 61 (1989) to promote continual quality contact with both parents.

The rights of noncustodial parents under Florida law and the Property Settlement Agreement gave Mr. Mulligan a sense of security that made a custody battle unnecessary. The standard he must now meet to change custody is greater than the standard he would have had to meet when the trial judge initially determined residential custody. *See e.g., Sherman v Sherman,* 15 FLW 698 (3d DCA March 13, 1990) which referred to this burden of proof as an "extraordinary burden." To allow a move to nullify the parties' agreement and the intent of shared parental responsibility will invite litigation in this area at a time when courts and domestic relations lawyers are trying to discourage litigation.

The court is acutely aware of the tremendous difficulty in divining what may be in the best interests of any child. Like most decisions affecting their lives we will only know, if we ever know, when they have become adults. Any parental or judicial decision in this sensitive area carries a risk, but a careful weighing of all facts and circumstances in this particular case leads this court to conclude that the best interests of these children require that they stay in Florida where this unusual father can participate in his sons lives in a manner contemplated by the concept of shared parental responsibility. Therefore, it is

ORDERED AND ADJUDGED as follows:

1. Elizabeth Mulligan's Petition for Modification requesting that she be allowed to remove the children from Florida is denied.

2. Kevin Mulligan's Petition for Modification requesting a change in residential custody shall remain pending and renoticed for trial if necessary.

3. Elizabeth Mulligan shall not remove the children from Florida without a court order.

208

4. Each party shall bear their own costs and attorney's fees.

**DONE AND ORDERED** in Chambers in Ocala, Marion County, Florida this 4th day of April, 1990.