SCHWARTZ, Senior Judge
(dissenting).[4]
This appeal by the father from a February 2008 final judgment of dissolution[5] challenges the trial court’s rulings concerning the parties’ then seven-year-old son.[6] For two years prior to the judgment the parties had “rotated custody” of the child with Ethan’s spending alternating weeks with his parents starting at 5:00 p.m. on Sunday evening. Based upon specific findings that the so-called legal presumption against that process had not *322 been overcome, the trial court (a) refused to continue the arrangement and (b) determined that the primary physical responsibility of the child should be with the mother, who is a teacher at the public school the child attends, with liberal visitation to the father, an assistant state attorney, considerably extended beyond the “standard” schedule.[7] Mr. Corey seeks reversal of both rulings. I would affirm on the ground that no error of law or abuse of discretion has been demonstrated.
I.
The appellant’s primary argument with respect to rejection of the preexisting “ro-fating custody” arrangement lies in his claim that the established “presumption” against rotating custody, see, e.g., Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980), and cases cited therein, which was enforced by the trial court, did not survive the enactment in 1997 of section 61.121, Florida Statutes. See Ch. 97-242, § 2, at 4437, Laws of Fla. In accordance with each of our sibling courts which have considered the issue, I disagree. See Chapman v. Prevatt, 845 So.2d 976 (Fla. 4th DCA 2003); Mancuso v. Mancuso, 789 So.2d 1249 (Fla. 4th DCA 2001); Mandell v. Mandell, 741 So.2d 617 (Fla. 2d DCA 1999).[8] See also Hosein v. Hosein, 785 *323 So.2d 703 (Fla. 4th DCA 2001).[9] Furthermore, I find no abuse of discretion in the trial court’s determination, after obviously careful consideration of the pertinent facts that the presumption against rotating custody had not been overcome. Cf. Mancusa, 789 So.2d at 1250; Hosein, 785 So.2d at 704.
II.
With respect to the primary residence issue, the trial court’s decision was, again, based upon an incisive analysis of the factors set out in the then-applicable section 61.13(3). The court found that almost all of them presented no basis for choosing between the parents whom all agree, fortunately and happily for their son, are both loving, competent, and concerned parents. Since, given the rotating custody decision, a choice had to be made, he based his ruling upon the following:
The length of time the child has lived in a stable, satisfactory environment and desirability of maintaining continuity. [61.13(3)(d), Fla. Stat. (2008) ]
Since January, 2006 the parties have shared custody of the child on a rotating schedule which continues through the present date. The Wife testified that she did not agree to this voluntarily and never felt that it was in the child’s best interests. Notwithstanding the arrangement, both parents testified that the child was thriving and “could not be doing better”, that they were able to communicate and admitted that both were good parents. The Mother lived with her parents on Key Biseayne from the date of separation through July of 2007 when she moved into her own home also on Key Biseayne. The Father subsequently moved to Key Biseayne from Southwest Miami-Dade to be physically close the child and remains living there and maintaining an apartment suitable and convenient for himself and the child.
To the extent possible while the parties have been operating under a rotating custody schedule the child’s environment has been stable and satisfactory. However, as discussed above where the Court rejected the Husband’s claim to continue rotating custody, there was competent, substantial evidence that living in the same household would be in the child’s best interest’s (sic) and provide the continuity and residential stability which he needs. The Court finds that greater stability and continuity will result from the Wife being the primary residential parent.
The court also found the following unspecified factor to be relevant under section 61.13(3)(m), Florida Statutes:
The Father is a law school graduate and a member of the Florida Bar. His current employment as an Assistant State Attorney with the Miami-Dade County State Attorney’s Office is an important public position with great responsibility. Likewise the Wife, as a Miami-Dade county school teacher has a position of similar importance and level of responsibility.
The Husband testified that only rarely would he get off work later than 5:30 P.M. so he would be able to pick the *324 child up from after school care at Key Biscayne Elementary School before it ended at 6:00 P.M. However in the event that he was delayed he had neighbors, extended family or even the Wife, to look to for help in picking the child up until the Husband could get there to take him. This is contrasted to the Wife who would never have such problems and would always be able to take the child home on a timely basis and not need to rely on the help of others. Further, the evidence showed that the child is beginning to participate in extracurricular activities on at least 2 day/week which ends at 4:80 P.M., a time which the Husband would rarely or never be available to pick him up, again requiring him to rely on neighbors, family or the Wife.
The Court finds that the availability of the Wife, be it after-school or in the case of an emergency, is a significant factor to consider in evaluating what custodial arrangement is in the child’s best interests. Further, while both parties have a network of extended family members, the Wife’s parent’s live geographically significantly closer than the Kendall-South Dade area where the Husband’s family primarily resides and would therefore be more quickly available if needed or in an emergency.
While it is stating the obvious that decisions in cases like this in general, and indeed in this case in particular, are difircult and wrenching — and while I need not say, as it would be impossible to say, what I would have decided had I been there— under our system, it is the trial court which is entrusted with that responsibility and whose decision must be upheld in the absence of a clear showing that it was mistaken. In the language of these cases, that means that we must find an “abuse of discretion” to reverse the determination in question. In conscience, I cannot so conclude. Cleary v. Cleary, 872 So.2d 299 (Fla. 2d DCA 2004); Artuso v. Dick, 843 So.2d 942 (Fla. 4th DCA 2003); Santiago v. Santiago, 830 So.2d 922 (Fla. 4th DCA 2002); Adair v. Adair, 720 So.2d 316, 317 (Fla. 4th DCA 1998); Sullivan v. Sidlivan, 668 So.2d 329, 329-30 (Fla. 4th DCA 1996); Bader v. Bader, 639 So.2d 122, 124 (Fla. 2d DCA 1994); Jones v. Jones, 633 So.2d 1096, 1099 (Fla. 5th DCA 1994); Ross v. Ross, 321 So.2d 443, 444 (Fla. 3d DCA 1975).[10] As might be appropriate in virtually all of these cases, therefore, in the last analysis I would affirm on the authority of Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980).

. The tone and form of this opinion are quite obviously explained by tire fact that it was initially written as the opinion of the court. Fortunately or unfortunately, neither of the other panel members agreed. (I have had this problem of non-persuasion before. E.g. Proprietors Ins. Co. v. Valsecchi, 435 So.2d 290, 298 n. 1 (Fla. 3d DCA 1983) (dissenting opinion), review denied, 449 So.2d 265 (Fla.1984); Ins. Co. of N. Am. v. Pasakarnis, 425 So.2d 1141, 1142 n. 1 (Fla. 4th DCA 1982) (dissenting opinion), quashed, 451 So.2d 447 (Fla.1984); Maszewski v. Piskadlo, 318 So.2d 226, 228 n. 1 (Fla. 2d DCA 1975) (dissenting opinion).)

. While we need not consider the broad revision of the statutory family law (including the repeal of section 61.121) which took effect on October 1, 2008, see ch. 2008-61, § 1, et seq., at 789, Laws of Fla., I wonder whether the changes in form and nomenclature, with which it is mostly concerned, significantly affect the previously established substantive law.

. The trial court ruled:
1. ROTATING CUSTODY
While a Court clearly has the power to order rotating custody (Sec. 61.121, Fla. Stat.) the long prevailing law has been that such an arrangement is presumptively NOT in a child’s best interests. In order to overcome that presumption and make such an award this Court would have to find that exceptional circumstances exist which make such an arrangement in the child’s best interests. See for example Mancuso v. Mancuso, 789 So.2d 1249 (Fla. 4th DCA 2001).
Florida courts have identified several factors that a trial court should consider in determining whether the particular circumstances in a case have overcome the presumption against rotating custody. Langford v. Ortiz, 654 So.2d 1237 (Fla. 2d DCA 1995). With the exception of the fact that both parents live in close proximity to each other the Court finds that the long-standing presumption against rotating custody was not overcome by competent substantial evidence.
While the Husband believes that such an arrangement is fair to him the Court finds that there was a lack of competent substantial evidence that alternating weeks would be fair to the child nor was there competent, substantial evidence that the frequency of the proposed rotation would not have a disruptive effect on the child and that it would likely not inhibit the development of a stable living environment, as the Wife testified it would.
The fact that the rotating arrangement was been (sic) '‘working’’ for over a year and that the child has adapted to it is insufficient for the Court to find that it is in his best interests to maintain that arrangement. The mere fact of his adapting does not mean that those circumstances are in his best interests. Ruffridge v. Ruffridge, 687 So.2d 48 (Fla. 1st DCA 1997).
The Court finds that the Husband has failed to prove by competent, substantial evidence the existence of special circumstances to overcome the presumption against rotating custody and his claim for the Court to order rotating custody is DENIED.

. As opposed to the “usual” Wednesdays and alternate weekends, the appellant was afforded the following in the child time sharing and parental responsibility order:
The Husband shall have time sharing on alternate weeks commencing on March 1, 2008. The Husband’s week-end time sharing shall commence at the completion of the after school care program at the child's school on Thursday or, at the Husband's option, immediately after school and end the following Monday morning when he drops the child off at school. The Husband shall also have time sharing with the child on Thursday night of the week in which he does not have weekend time sharing, with the time sharing to commence at the completion of the after school care or, at the Husband's option, immediately after school, on Thursday and end on Friday morning when he drops the child off at school.
If any weekend provided for in this section includes any day, or falls during any weekend or other time period provided for in Sections 2 through 10 below, the time sharing provisions of that section shall govern.
[[Image here]]
The child time sharing and parental responsibility order was amended, as follows:
If any time during the Father’s visitation with the minor child the Father is unable to pick up the minor child after school then the Mother shall be entitled to pick up the minor child after school, spend the afternoon with the minor child, and the Father shall be entitled to pick up the child during his lime sharing at the Mother’s residence at any time.
[[Image here]]

. The Mandell court stated:
[W]e take this opportunity to address one issue that the parties raised. They ask whether section 61.121, Florida Statutes f 1997), effectively sets aside the long held presumption that rotating custody is not in the best interest of a minor child. See Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980). Section 61.121, as adopted by the legislature in 1997, provides: "The court may order rotating custody if the court finds that rotating custody will be in the best interest of the child.”
If, by this language, the legislature sought to set aside the presumption against rotating custody, it failed. Nothing in the plain language of the statute suggests that the legislature intended to abolish the presumption. Our review of the limited legislative history offers little insight on the issue. We note that House Bill 1421, which enacted this provision, also amended section 61.13, Florida Statutes as follows:
61.13 Custody and support of children: visitation rights; power of court in making orders.—
(2)(d) No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent.
*323 H.B. 1421, 2d Sess. (Fla. 1997).
The language in this amendment shows that the legislature understood how to set aside a previously established presumption. The absence of such language in section 61.121 leads us to conclude that either the legislature did not intend to set aside the presumption, or, if it did, it failed to appropriately implement its intent.

. Obviously, the majority opinion is in direct conflict with these decisions.

. Specifically, the law is to the contrary of the appellant’s claim that the fact that the previous agreed "rotating custody” has resulted in the child’s apparent well-being means that it must be continued virtually as a matter of law. See, e.g., Santiago, 830 So.2d at 923 ("We reject the former husband's argument that the time the child spends with each parent, which can be ascertained from the face of the judgment in this case, is determinative. See § 61.13(3), Fla. Stat. (2001) (listing the numerous factors that trial judges are to consider in making a primary residential parent designation); Undercuffler v. Undercuffler, 798 So.2d 867 (Fla. 4th DCA 2001)"); Young v. Hector, 740 So.2d 1153 (Fla. 3d DCA 1999) (upholding the trial court’s decision as to custody notwithstanding contrary arrangements established by agreement of the parties had been successful).